O’Neall, J.
dissenting.- — -I do not propose to enter into any discussion of the principles involved in this case: but merely •to state, as clearly and concisely as I can, my own opinions.
I still think the statute of Geo. is not of force in this State. Conceding, however, this, (as I shall hereafter be bound to do,) and that it applied to a testament, under the Act of 1824, (which the Court holds it does not,) still neither, in its words nor intendment, does it apply to an executorship. It is hence necessary, in some other way to shew, that an executor attesting a will may be competent to prove it. There is no doubt, that an executor is competent generally to. prove a devise of land. Why? — Because his office does not generally touch the land, and he has therefore no sort of interest, Henderson v. Kenner. It is true, if the devise be to the executor to sell the land, or he be directed to sell it, he could not generally be a witness to prove the will. For he would have a direct interest.
The reason of the exclusion of a legatee, or executor, as a witness to a will, is on the ground of interest alone. But to make one an executor, in this State, there is something necessary beyond the mere appointment, in the will. He must assume the duties. This is ordinarily done by probate of the will, and qualification. Ifhe'refuses to qualify, and the refusal be entered of record and administration be granted, he is not, and he cannot be, executor. Williams on Executors, 153-155. The executor Hair has refused, his refusal has been recorded, and administration has been granted. How he can be regarded as not a credible witness, under the Act of 1824, I cannot perceive. He has now, and never has had, any interest 1 For to say, that a man can be made executor against his will, is an absurdity. Neither can it be said he has any interest until he clothes himself with the power and authority to execute the testament. There is no case within my knowledge in which it has ever been held that one named executor and refusing to qualify was an incompetent witness. In Taylor’s case the executor had qualified, and *593 acted to his death: he was therefore an executor clothed with the legal estate of the testator’s “ goods, chattels and credits ;” he bad earned commissions, which he could only have as executor. So too if alive, he must have been a party to the proceedings proving the will, and in such a case he clearly could not have been a witness. The question of his competency, or credibility, ought to have been judged as if he were then in Court and offered as a witness. For proof of his signature carries the legal implication, that he would, if alive, prove every thing which it purports. In Durant v. Ashmore, and Filson v. Philson, decided at Columbia, December, 1848, the executor, in both cases, refused to qualify; in one he was attesting witness; in the other not. In the case of Durant v. Ashmore there were three attesting witnesses, beside the executor. In each case, it was held, that the executor was competent, and gave important evidence to the fact of execution. It seems to me, that these cases remove the difficulty. For, if the executor can be sworn, and he has no interest in the question propounded to him, as to attestation and execution, the Court, cannot refuse to hear his answer, — and then the question of credibility, as in all other cases, is for the jury.
2Rich. 84.
3McC. 71
But it is said, the credibility or competency of the witness must be judged as of the period of attestation. This 1 admit is true to prevent the avoiding of a will. For no subsequent disability of one of the witnesses shall prevent the will from being proved and allowed. But it can hardly be held justly and properly, that this principle, intended to sustain wills, should be used as a means of destroying them. The notion is, that an executor named in a will, who refuses to act, or qualify, has an interest to sustain it. Such a doctrine is very much like the doctrine laid down in Walton v. Shelly, that no party who has signed a paper, or deed, shall ever be permitted to give testimony to invalidate it. Both proceed upon the notion, that there is a legal interest, when in fact there is none. The rule of Walton v. Shelly was reversed by Jordaine v. Lashbrooke, and put upon the true question, “ has the party an interest ?” This was recognized and adopted by the Court of Appeals in this State, in Packhard v. Knight. Why should the artificial rule, in reference to a testament,- be maintained ? I confess it is to me without a reason in its fa-vour. What interest can an executor have, at the attestation? The will is ambulatory to the testator’s death. It is nothing until then. When the testator is dead, if the executor were then absolute, there would be reason to say, his interest would be carried by relation back to the period of attestation. But that is not the case. He may, or may not, be executor, just as he pleases. If he says, I will not be, he stands just as if he never had been named executor, and is, I think, a perfectly good witness for every purpose.
2 BAy482, EqJiep.274. 2 Bail. 24.
It will not be denied that our cases, from 1789, when our Act on the subject of wills was passed, have, until Taylor v. Taylor, more or less, been decided in conformity to the views which I have’ suggested. Grimke’s Law of Executors, 73 ; Dickson v. Bates, Snelgrove v. Snelgrove, Garland et al. v. Crow, Moon, guardian, v. Herndon, decided in Equity, at Edgefield, in 1816. That case, as has been shewn, decides nothing to the contrary. It is true, in the argument of the Judges, the doctrine now about to be established, as law, was again and again reiterated. But such dictums, even if they have foundation in the English cases, ought not to overthrow all which has been done for more than half a century in South Carolina. The mischief, however, which the rule will work, will soon be seen and felt in the community ¡ — wills will be set aside, without merit, on a mere apex juris, until the people willeorrect.it. Until then I am content to stand as in error, sustained as I am by such Judges as Grimke, Waties, Bay, Brevard, DeSaussure, Nott, Colcock and Johnson, who held and maintained that as law which is now held not to be.